DAVID W. SIMONS, EXECUTOR, v. THE YPSILANTI
PAPER COMPANY (A CORPORATION).

*Contract—Rescission—Burden of proof—Measure of damages.*

1. In a suit to recover damages for the refusal of a vendee to
receive rags under a contract providing that they should be as
good or better in quality than those furnished by the vendor
the previous year, the burden is upon the plaintiff to establish
this fact, and a charge that the burden of proof was upon the
defendant to show that the rags delivered under the contract
were of an inferior quality to those delivered the previous year
is erroneous.

2. In this case the Court discuss the testimony as to damages, and
find that a fair basis for their measurement would be the
market value of the rags in Detroit, determined by their value
in Chicago and Milwaukee, less the freight from Detroit to
those cities. It is also suggested that an ascertainment of
damages will be less liable to be erroneous if the jury are
instructed to find the market price of the rags at the date, or
as nearly so as possible, of each time of delivery under the
contract, and find the damages for each breach, instead of
"lumping" the whole together, as was done on the first trial.

Error to Washtenaw. (Kinne, J.) Argued October
10, 1889. Decided October 25, 1889.

*Assumpsit.* Defendant brings error. Reversed. The
facts are stated in the opinion.

*Charles R. Whitman (Sawyer & Knowlton* and *John F.
Lawrence,* of counsel), for appellant, contended·

1. The measure of damages in this case is the difference between
the market value of the goods at the *times* and the *place* the
several deliveries ought to have been made and the contract
price; citing *Brownlee v. Bolton,* 44 Mich. 218; *Dwiggins v.
Clark,* 94 Ind. 49; Benj. Sales, § 870; and this is the rule of
law in actions upon executory contracts for refusal to accept
goods; citing *Gordon v. Norris,* 49 N. H. 376; *Collins v.
Delaporte,* 115 Mass. 159; 1 Sedg. Dam. (7th ed.) 595 (note 6).

2. We do not dispute the right of a vendor to bind the vendee, in case goods are not accepted, by a resale, if made in a reasonable time; but in the case of a falling market it must be made at once; citing *Smith v. Pettee*, 7 Hun, 334; 1 Sedg. Dam. (7th ed.) § 281 (note); 3 Suth. Dam. 359; and, as the contract in this case calls for deliveries by installments, the plaintiff could not hold the rags due in May, June, and July until a final breach in October, and then sell the entire lot, and bind defendant by such resale; citing *Barningham v. Smith*, 31 L. T. Rep. (N. S.) 540; 2 Suth. Dam. 358.

3. As to plaintiff having the burden of proof as to quality of rags, counsel cited *Stewart v. Ashley*, 34 Mich. 183.

4. The contract was a verbal one for the sale of goods, to be executed distributively by installments, and delivery and receipt of one or more installments, and payment therefor, did not relieve subsequent installments from the operation of the statute of frauds; citing *Deming v. Kemp*, 4 Sand. 147; *Seymour v. Davis,* 2 Id. 239; Reed, Stat. Frauds, § 296.

*Conely, Maybury & Lucking,* for plaintiff, contended:

1. If there is no market value, or but an uncertain one, the value of the property may be shown by such prices on actual sales as took place at or near the time and place, including evidence of the sale of like articles for months before and after the time in question; citing Field, Dam. § 264; Blackburn, Sales, 511, 512; 2 Benj. Sales (Kerr's Am. ed.), 885; 2 Suth. Dam. 375-8; and sales at other markets may be shown, together with cost of transportation and the like; citing Field, Dam. § 264; and evidence of the value of a cow one year before the time in question has been received; citing *Denton v. Smith*, 61 Mich. 431; and of land seven or eight months after; citing *Abell v. Munson*, 18 Id. 313.

2. It may be said to be a universal rule that where a party admits that an obligation once rested upon him, but claims a discharge from it, he has the burden to show the matter of discharge, as, for instance, payment, bankruptcy, statute of limitations, etc. Defendant admits the obligation of the contract, but claims that the rags delivered were inferior to the contract standard. The burden is upon defendant to establish this fact; citing *Lothrop v. Otis*, 7 Allen, 435; *Briggs v. Humphrey*, 5 Id. 314; *Dorr v. Fisher*, 1 Cush. 271; *Webber v. Dunn*, 71 Me. 331; *Day v. Raguet*, 14 Minn. 273; *Hollister v. Bender*, 1 Hill, 150; *Topper v. Snow*, 20 Ill. 434; *McGregory v. Prescott*, 5 Cush. 67; *Tobin v. Aid Society*, 72 Ia. 261; *Cutler v. Wright*, 22 N. Y. 472; *Peck v. Hunter*, 7 Ind. 295.

3. Where a verbal contract is void under the statute of frauds, a partial delivery of goods under it validates the entire contract; citing Reed, Stat. Frauds, § 290.

4. In answer to the claim that the contract was for the delivery of 25 tons of rags per month, making 12 separate contracts, and that the delivery of five installments and payment therefor did not take the others out of the statute, counsel cite *Gault v. Brown*, 48 N. H. 185–7; where the question is discussed, and authorities collected.

MORSE, J.   October 12, 1885, the firm of S. Simons & Son, of Detroit, Michigan, contracted to sell and deliver rags to the defendant, which contract is evidenced by the following memorandum in the handwriting of Cornelius Cornwell, president of the defendant company:

"Oct. 12, 1885.   Bought of S. Simons & Son, 300 tons rags at $2.06, delivered at Ypsilanti, 3 months' time; one car to be shipped this month, and 25 tons per month until the whole is shipped, the last shipment to be made about Oct. 10, 1886.   Rags to be as good or better than what he has furnished us in 1885."

Under this contract, and up to May 3, 1886, 129 tons were delivered and received.   At that date defendant refused to receive any more rags on the contract, claiming that those already received were not up to the standard of the agreement.   With a slight deduction, the rags received were paid for.   The claim for the value of the balance of the rags undelivered was assigned by S. Simons & Son to Simon Simons, who commenced the present suit.   The present plaintiff is his executor.

The suit is planted in *assumpsit*, and the plaintiff claims in his declaration that the rags furnished in 1885, and mentioned in the contract, were of the quality known as "good, merchantable *print* rags."   He avers that the said firm of S. Simons & Son proceeded to perform the contract on their part, and continued to faithfully perform the same, until May 3, 1886, when the defendant absolutely refused to receive or pay for any more of said

rags, or further continue the contract on its part; that at this time 129 tons had been delivered, and 171 tons remained undelivered. S. Simons & Son were ready and offered to deliver this balance, as provided in said contract, but defendant refused to receive them. For this breach the plaintiff claims damages

The defendant pleaded the general issue, and gave notice that it would show that it was discharged from the further performance of the contract on its part by reason of the refusal of the said firm of S. Simons & Son to deliver under the contract rags of the quality described in the contract.

The plaintiff had verdict and judgment in the sum of $3,085.98

As the evidence developed upon the trial, the only important issue to be determined by the jury was whether or not the plaintiff furnished to the defendant such rags, or rags of such a quality, as were called for by the contract. The jury were instructed that if they found that the 129 tons delivered were substantially as good or better than the rags furnished by S. Simons & Son to defendant in 1885, before the contract, then their verdict must be for the plaintiff. On the other hand, they were instructed as follows:

"Under the contract between the parties, the regular performance of each installment of the plaintiff was a condition precedent to the continuance of defendant's obligation under the contract; and if you find from the evidence that plaintiff, in the spring of 1886, sent defendant rags inferior in quality to those he furnished defendant in 1885, that thereupon defendant objected to the quality of the rags, but that, notwithstanding such objection, plaintiff continued to send rags inferior in quality to those contracted for,—that would amount to such a breach of the contract as would entitle the defendant to treat the contract as discharged."

By these instructions the issue was plainly and clearly

submitted to the jury, who found against the defendant.

But the court committed error in further stating that the burden of proof rested on the defendant to show that the rags delivered under the contract were of an inferior quality to those furnished by S. Simons & Son to defendant in 1885. The plaintiff was insisting that S. Simons & Son were entitled to the further performance of the contract on the part of the defendant, because up to the time of the refusal to take any more rags S. Simons & Son had fully and faithfully performed their part of the contract, which could not be true unless the rags delivered by them were of as good or better quality that those furnished defendant in 1885. It was therefore a part of plaintiff's case to establish this fact, and the burden of proof was upon him. The instruction requested by plaintiff's counsel, and given by the court, above noted, recognized that the issue raised by the pleadings and proofs was whether the quality of the rags delivered —the 129 tons—was as good as those furnished defendant in 1885. The affirmative of this issue was clearly with the plaintiff. *Stewart v. Ashley,* 34 Mich. 183.

It is further objected that the jury were allowed to adopt an erroneous measure of damages. The court charged as follows:

"If you find for the plaintiff, the damages to be awarded will be the difference between the market value of the goods at the times the several deliveries ought to have been made and the contract price."

No fault is found with this; but the error is claimed in the following remarks of the circuit judge in connection therewith:

"If you find from the evidence that the price at which the rags were sold—$1.22¾ per cwt., net, in Detroit—was as good or a better price than could have been obtained for that class of rags between the date of the cancellation of the contract by defendant and the time of such sales,

that market value of these rags at the time they should
have been received by defendant under the contract may
be regarded as the price so received, to wit, $1.22¾ per
hundred pounds; and if you find that the plaintiff is
entitled to recover, then the measure of damages will be
the difference between the said net contract price of $2
per hundred pounds and that market value so ascertained
to be $1.22¾ per hundred pounds."

The evidence showed the freight to Ypsilanti to be six
cents per hundred pounds, which brought the contract price,
net, at Detroit, to $2.   The testimony further shows that
no sales were made of the class of rags named in the con-
tract until after the expiration of the time for the deliv-
ery of the whole 300 tons under the contract.   About
December 1, 1886, sales were made by S. Simons & Son
to parties in Wisconsin, shipping to Milwaukee, and sell-
ing there for $1.37½, with two per cént. off for cash.
From this $1.37½ was deducted the freight from Detroit
to Milwaukee and the two per cent., leaving the net
price $1.22¾, as figured by the plaintiff; and the court in
his charge to the jury adopted the calculation of the
plaintiff.   Other sales were made about the same time in
Ohio, the price being about the same, or lower.   The
testimony on the part of the plaintiff, which was not
controverted by any evidence offered or received on the
part of the defendant, showed that there is no market
price for these rags, save in large cities; Chicago and
Milwaukee being the principal rag markets.   The plaint-
iff's assignors, S. Simons & Son, did not undertake to
sell any of these rags to other parties until in June, 1886,
as from the correspondence between them and the defend-
ant it would seem that they still hoped to deliver the
rags until June 11, 1886, although they were informed
May 3, 1886, by the defendant that it would receive no
more.   The plaintiff, being the only member of the firm
of S. Simons & Son living, testified that from June up

to December the firm tried to sell these rags, but were not able to sell them,—

"That is, not at anything reasonable. We did not receive any direct offers. Some people stated what they could buy for; they said they did not want any, but could buy for certain prices,—$1.20 in one case."

They were not able to sell any of them up to December. During the period of June, July, August, and September there were print rags sold in the markets all the way from one cent a pound up to $1.21 per 100. The rags sold in December were bargained for in November. It was also shown by a Mr. Lowenthal, a dealer in rags, residing in Chicago, that he visited the store of S. Simons & Son in November, 1886, and examined some rags claimed by plaintiff to be of the quality of rags sold by that firm to the defendant. He (Lowenthal) called these rags—

"Trade print rags,   *   *   *   superior to print rags, as they are packed in Detroit, and much superior to Chicago and Milwaukee print rags."

He could not give the value of these rags, or print rags, at Detroit at any time, or at Chicago or Milwaukee in December, 1886. He testified that the market price of print rags varied from $1.15 to $1.25 per 100 pounds in those cities through June, July, August, September, and October. This was the price of print rags. That the rags he saw in Detroit were worth about 5 or 10 cents per 100 more than the best quality of Chicago print rags. The plaintiff also testified that the rags to be furnished defendant were of a better quality than ordinary print rags, but could not or did not tell how much more they were worth per 100.

We do not understand from the argument of defendant's counsel that he objects to this fixing of $1.22¾ as a basis, if there was any evidence in the case to support it; or that he would complain of the jury using that

amount for the whole 171 tons, if there was any testimony showing that it was as good or a better price than could have been obtained for the rags at any of the times when the installments should have been, but were not, delivered. In such case the defendant certainly could not be harmed, as he would be called upon in any event to pay no more, and might pay less, than he would if the damages on each installment were ascertained by the price on the particular day of each breach. But what he contends is this: There was no competent evidence by which the jury were authorized to find that the market value of the rags on any day of any breach was not more than $1.22¾. When the letter of May 3, 1886, from defendant to plaintiff, refusing to take any more rags, was received, the April car-load had not been delivered. The breaches of the contract by refusing this installment, and also the installment for the month of May, do not appear, as claimed by plaintiff, to have been reached by the evidence. We can find no value anywhere in the testimony set upon these rags in the months of May or April. This was probably an oversight, owing to the plaintiff's idea that there was no breach until June 11. These breaches covered about 50 tons. We think there was sufficient evidence from that time on to warrant the finding of the jury as to the balance.

It seems to have been substantially admitted or conceded by both parties that the market value in Detroit was the proper value, and that this was determined by the value in Chicago and Milwaukee, less the freight from Detroit to those cities; and from the testimony we think that was a fair way of obtaining it. There were no sales shown in Detroit. It is true that in June the plaintiff (who was a member of the firm of S. Simons & Son) used 17,000 pounds of these rags in a paper-mill in Detroit, in which he was interested with another party,

and charged the paper-mill concern $1.62½ per 100 for them. But this one act did not fix the price in June, nor was it controlling as to the market value in Detroit. It was a circumstance to be considered by the jury in ascertaining the market price, in connection with the other evidence.

It is complained that all the testimony of value was confined to ordinary print rags, while the rags to be delivered to defendant were to be of much better grade or quality. There was a dispute between plaintiff and defendant as to the degree of this better quality. It is true, plaintiff did not swear what was the value of the rags above print rags; but the testimony of Mr. Lowenthal showed them to be worth about 10 cents per 100 more than print rags as they were known in the Chicago market. This would make the highest price for these rags in that market for the months of June, July, August, September, and October $1.35 per 100 pounds, and less than the price of the December sales.

It is also claimed that, as the goods were contracted to be sold to defendant on three months' time, it was entitled to the deduction of two per cent. off for cash, if such deduction was allowed on the December sale, which was also on time. This claim is no doubt correct. The two per cent. should not have been deducted from the $1.37½. Only the freight charges from Detroit to Milwaukee should have been taken from the gross price. The plaintiff's counsel suggest that this deduction, erroneously made, is more than offset by the loss of interest on the damages, to which he would have been entitled if the jury had found the same by installments at the times of the different breaches, but that by calculating the damages in one sum, and at the expiration of the time for the whole delivery, enough interest was lost to more than cover the sum gained by the two per cent.

77 MICH—13.

As the case must go back for a new trial, it is not necessary to review the matter of damages any further, but it may be well to suggest that an ascertainment of damages, if any shall be found by the jury on a future trial, will be less liable to be erroneous if the court shall instruct them to find the market price of the rags at the date, or as nearly so as possible, of each time of delivery, and find the damages for each breach, instead of "lumping" the whole together, as was done in this trial.

The judgment must be reversed, and a new trial is granted, with costs of this Court to defendant.

The other Justices concurred.